Upon review of the competent evidence of record with respect to the errors assigned, and finding no good ground to rehear the parties or their representatives or receive further evidence, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 3 November 1997 as:
 STIPULATIONS
1. At the time of the alleged contracting of the occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. An employer-employee relationship existed between defendant and plaintiff.
3. Defendant is self-insured for worker's compensation coverage.
4. Plaintiff's average weekly wage was $409.74, based upon a Form 22 completed by defendant.
5. Plaintiff worked for defendant at their Springfield Plant in the weave room from 24 November 1975 until 21 April 1995.
6. During the period of plaintiff's employment with defendant until 1991 or 1992, defendant processed a blend of 65% polyester and 35% cotton. Defendant's company processed a 50/50 blend after that time.
7. Plaintiff received short term disability benefits in a fully employer-funded plan at the rate of $75.00 per week for thirteen weeks.
8. In addition, the parties stipulated into evidence the following:
a. Personnel records marked as Defendant's Exhibit 1.
b. Leave of absence records marked as Defendant's Exhibit 2.
c. Attendance records marked as Defendant's Exhibit 3.
d. The company medical file marked as Defendant's Exhibit 4.
e. Nurse's notes from defendant's records marked as Defendant's Exhibit 5.
f. A blank respiratory questionnaire and responses filled out by plaintiff marked as Defendant's Exhibit 6.
g. Pulmonary function tests marked as Defendant's Exhibit 7.
h. Cotton dust level surveys marked as Defendant's Exhibit 8.
9. A pre-trial agreement dated 3 November 1997 was submitted by the parties and is incorporated by reference.
***********
Based upon the competent evidence in the record, the Full Commission makes the additional following
 FINDINGS OF FACT
1. Plaintiff, who was fifty-seven years old at the time of the hearing on 3 November 1997, has a six grade education, although he has taken classes with the intention of obtaining his GED. Plaintiff began working for defendant in 1963 or 1964 in a position which involved spot washing in the dye house at the Maxton Air Base Plant. After approximately one year, plaintiff transferred to Plant #6, where he worked in the weave room. Plaintiff's job there involved cleaning the looms, sweeping and blowing off the area. He used Varsol to clean grease off of the looms. After five to six years in that position, plaintiff began doffing cloth in the weave room at the Patricia Plant. In each of these plants, there was visible lint and dust, especially during blowing off procedures.
2. In 1975, plaintiff was transferred to the Springfield Plant where he worked until April 1995. Throughout that period, plaintiff was worked in the weave room. His jobs there included tying-in machine helper, weaver and warper helper. Plaintiff worked in the warper helper position for the last ten to eleven years of his employment with defendant.
3. During plaintiff's employment at the Springfield Plant, air conditioning was installed and the company took other efforts to remove dust and lint from the air. Plaintiff could still observe dust in the mill, but in the mill's yearly tests the weave room consistently had acceptable levels of cotton dust pursuant to OSHA regulations from April 1982 until plaintiff left in 1995. Beginning in 1980, he was required to wear a mask when the area was blown down with compressed air. He received a helmet type of respirator in 1995. In 1982 or 1983, the defendant stopped using Varsol to clean grease.
4. Plaintiff smoked cigarettes for about twenty years. He smoked approximately one pack per day and, according the mill's medical records, he quit smoking in 1977.
5. Contrary to his testimony, plaintiff did not develop noticeable breathing problems until approximately 1994. He was initially treated by Dr. Nascimento, who referred him to Dr. Shilen, a doctor specializing in pulmonary medicine. Dr. Shilen first examined on 20 April 1995. At that time, plaintiff complained of shortness of breath with exertion and sometimes at rest. Pulmonary function tests demonstrated airways obstruction which improved after administration of a bronchodilator. Dr. Schilen prescribed medication for plaintiff and by January 1996 reported dramatic improvement in plaintiff's overall condition.
6. On 22 February 1996 plaintiff was examined by Dr. Hayes, a pulmonary specialist on the Industrial Commission's Textile Occupational Disease Panel. As of that date, plaintiff had not worked at the mill for ten months and he advised the doctor that his condition had not improved since he left the mill. On examination, he was obese and hypertensive. Dr. Hayes detected some wheezing and what appeared to be an insignificant heart murmur. Pulmonary function tests performed that day revealed little to no air flow obstruction or restriction, but in Dr. Hayes' opinion, the scores were likely better than would be present had plaintiff not been taking so much medication. Consequently, he assigned plaintiff an AMA Class II impairment.
7. Plaintiff has claimed that his occupational exposure to cotton dust at work caused the pulmonary problems and impairment, and he offered the testimony of Dr. Shilen on that issue. Although Dr. Shilen was a qualified pulmonologist whose treatment had benefited plaintiff, he admitted that he did not know much about plaintiff's job or about textile mills. Dr. Shilen knew nothing about OSHA standards or permissible exposure levels for cotton dust and indicated that he was not an expert as to the etiology of airways obstruction insofar as it was related to employment.
8. Dr. Hayes is an expert in occupational lung disease, whose opinions are given more weight than those of Dr. Shilen by the Full Commission. Dr. Hayes did not relate plaintiff's chronic obstructive pulmonary disease to his employment with defendant, although he did indicate that plaintiff's symptoms probably had been temporarily aggravated with dust exposure at work just as they would be likely aggravated by exposure to dust, fumes and smoke away from work.
9. Plaintiff has developed mild chronic obstructive pulmonary disease. However, he was not placed at an increased risk of developing chronic obstructive pulmonary disease by virtue of his occupational exposures as compared to the general public not so employed. Furthermore, plaintiff's occupational exposure to cotton dust was not a significant contributing factor in the development of his chronic lung condition.
10. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's chronic obstructive pulmonary disease was not an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. G.S.97-53(13).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his chronic obstructive pulmonary disease. G.S. 97-2 et seq.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER